UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY BRADY, ) <br> on behalf of herself and all others ) <br> similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> TI GROUP AUTOMOTIVE ) <br> SYSTEMS, L.L.C, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:21-cv-11905-JEL <br><br> Judge: Judith E. Levy |

## DEFENDANT'S MOTION FOR ENTRY OF ORDER APPROVING DEFENDANT'S PROPOSED NOTICE AND CONSENT FORMS AND METHOD OF DELIVERY

Defendant TI Group Automotive Systems, L.L.C. ("TI" or "Defendant"), by and through its attorneys, Dickinson Wright PLLC, respectfully moves the Court for entry of an Order

(1) Approving Defendant's Notice and Consent forms attached hereto as Exhibit A;

(2) Authorize issuance of the Notice by the agreed-upon notice administrator, Analytics L.L.C., by U.S. mail with follow-up skip-tracing and remailing of any returned Notice; and

(3) Denying Plaintiff's request for a list of all eligible collective class members, irrespective of whether they decline to participate.

In support of its Motion, TI relies upon the facts, legal authority, and argument contained in the accompanying Memorandum.

Pursuant to E.D. Mich LR 7.1, Defendant sought, but did not obtain concurrence in the relief sought in this Motion.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant its Motion enter an Order Approving Defendant's Proposed Notice and Consent Forms and Method of Delivery, and grant any such further relief as the Court deems necessary.

Dated: January 17, 2023

Respectfully submitted,

/s/ Angelina R. Delmastro

DICKINSON WRIGHT PLLC
M. Reid Estes, Jr. (TN #9043)
424 Church Street, Suite 800
Nashville, TN 37219
Tel: 615-254-6538; Fax: 844-670-6009
restes@dickinsonwright.com

Mahesh K. Nayak (P54867)
Angelina R. Delmastro (P81712)
2600 W. Big Beaver Rd., Ste. 300
Troy, MI 48084
Tel: 248-433-7200; Fax: 844-670-6009
mnayak@dickinsonwright.com
adelmastro@dickinsonwright.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, along with email delivery of such filing to all counsel of record.

    Respectfully submitted,

    DICKINSON WRIGHT PLLC

    */s/ Angelina R. Delmastro*
    Mahesh K. Nayak (P54867)
    Angelina R. Delmastro (P81712)
    2600 W. Big Beaver Rd., Ste. 300
    Troy, MI 48084
    Tel: 248-433-7200; Fax: 844-670-6009
    mnayak@dickinsonwright.com
    adelmastro@dickinsonwright.com

    M. Reid Estes, Jr. (TN #9043)
    424 Church Street, Suite 800
    Nashville, TN 37219
    Tel: 615-254-6538; Fax: 844-670-6009
    restes@dickinsonwright.com
    *Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY BRADY, )<br>on behalf of herself and all others )<br>similarly situated, )<br> )<br>        Plaintiff, )<br> )<br> )<br>v. )<br> )<br>TI GROUP AUTOMOTIVE )<br>SYSTEMS, L.L.C, )<br> )<br>        Defendant. )<br> ) | Case No. 2:21-cv-11905-JEL<br><br>Judge: Judith E. Levy |

**DEFENDANT'S MEMORANDUM REGARDING
REMAINING NOTICE ISSUES**

Now Comes Defendant, TI Group Automotive Systems, L.L.C. (hereinafter "Defendant" or "TI"), and submits this Memorandum in support of its Motion for Entry of an Order Approving TI's Proposed Notice and Consent Forms and Method of Delivery.

## I. Introduction

In the Court's Order granting in part, and denying in part, Plaintiff's Renewed Motion for Conditional Certification (ECF No. 32), the Court held that portion of Plaintiff's Motion involving court-supervised Notice in abeyance

pending the parties' submission of a stipulated Notice form or, alternatively, supplemental briefing on issues related thereto. By Text-Only Order dated December 14, 2022, the Court directed the parties to file a stipulation as to Notice contents and manner of distribution, or alternatively, permitted TI to file a supplemental brief addressing any unresolved issues.

While the Parties have resolved a number of Notice content issues, three remain:

1) The description used in the Notice to designate those employees who are conditionally eligible to participate in the collective action;

2) Whether issuance of the Notice by three methods (regular mail, text, and email), as is being insisted on by Plaintiff, is reasonable or necessary given that the Parties have agreed to use Analytics L.L.C. to act as Notice Administrator, which will issue Notice by regular mail and conduct skip tracing and remailing of any returned Notices, and whether Notice by text and email is even feasible and/or is unduly burdensome for Defendant in any event; and

3) Whether Plaintiff is entitled to a list of the names of all eligible collective class members regardless of whether they choose to opt-in and be represented by Plaintiff's counsel.

For the reasons that follow, Defendant submits that the Court should approve its Notice and Consent forms attached hereto as **Exhibit A**, authorize issuance of the Notice by the agreed-upon notice administrator, Analytics L.L.C. ("Analytics"), by U.S. mail, with follow-up skip-tracing and remailing of any returned Notices, and deny Plaintiff's counsel's request for a list of all eligible collective class members including those who decline to participate.

## II. Argument

**A. Defendant's Description of Eligible Class Participants is Consistent with the Court's – and Plaintiff's Counsels' Description – of the Conditionally Certified Class During the December 5, 2022 Hearing**

At the December 5, 2022 hearing on Plaintiff's Motion for Conditional Certification, Plaintiff's counsel described the narrowed-down class Plaintiff sought to certify as "direct versus indirect employees" (Transcript of December 5, 2022 Hearing, ECF No. 30, PageID.921); employees who "worked on the production floor performing actual…assembly work" (*id.*); consisting of "operators, material handlers, and assemblers" (*id.* at PageID.954); "people that work on the manufacturing floor, on the production line" (*id.*); and "the production employees." (*Id.*). The Court left no doubt that it was the Production Operator position – also referred to as "direct employees" – that the Court was conditionally certifying at the three TI plants in question:

> MR. ESTES: Just to be clear, we're talking about direct manufacturing employees, not indirect employees who work in a support capacity.
>
> THE COURT: Yes.

(*Id.* at PageID.956.)

Consistent with the detailed discussions during the December 5, 2022 hearing, TI's proposed Notice defines the class of eligible employees very specifically and accurately as:

3

> To: All former and current Production Operators ("direct manufacturing employees") of TI Group Automotive Systems, L.L.C., ("TI Group") who worked on the production floor making and/or assembling auto parts at TI Group's Cartersville, Georgia, Marysville, Michigan, or Ligonier, Indiana plants any time between [3 years prior to the issuance of Notice] and the present.

(*See* **Exhibit A**, TI's Proposed Notice and Consent Forms.)

Plaintiff's most recent proposed Notice defines the class of eligible employees very broadly and inaccurately as "*[a]ll* former and current manufacturing employees:"

> To: All former and current manufacturing employees of TI Group Automotive Systems, L.L.C., ("TI Group") who worked at TI Group's Cartersville, Georgia, Marysville, Michigan, or Ligonier, Indiana plants any time between [3 years prior to the issuance of Notice] and the present.

(*See* **Exhibit B**, Plaintiff's Proposed Notice and Consent Forms (emphasis added).)

The record is uncontroverted that "Production Operator" is the official job title of employees who work on TI's production floor assembling and making auto parts,[1] and that Production Operators are also referred to as "direct" employees,[2] in contrast with "indirect" employees who do not work on the production floor.

---

[1] "'Production Operator' is a generic job classification which encompasses distinct job responsibilities at different work stations staffed by direct employees." (Allen Declaration, ECF No. 19-2, ¶ 11.)

[2] "Hourly-paid employees who work on the production floor and are physically involved in the manufacturing or assembling of automotive products are referred to as 'direct employees' in the TI system." (Allen Declaration, ECF No. 19-2, ¶ 12.)

4

Plaintiff does not dispute this. As the transcript of the December 5, 2022 hearing makes crystal clear, Production Operators – i.e. "direct employees" – are the exact group of employees that Plaintiff's counsel represented they were seeking to certify, and that the Court did in fact conditionally certify based upon those representations.

At the very outset of the December 5, 2022 hearing, the Court noted its "concerns about the [Plaintiff's initial] definition of the class and the declarations," and observed that Plaintiff had since "redefined…the class in a somewhat *more narrow manner*." (ECF No. 30, PageID.919 (emphasis added).) In response, Plaintiff's counsel acknowledged that while they had previously defined the class "far more broadly as former and current manufacturing employees," in their "renewed motion, the scope is defined much more specifically as current and former manufacture [sic] employees whose primary duties included material handling, loading machines, unloading machines, running machines, and assembling fuel components." (*Id*. at PageID.920.) Further, in answer to the Court's question whether "people who are *on the production floor* at the defendant's factories…all wear the same PPE no matter what," Plaintiff's counsel replied "I think they generally, yes, they generally do wear the same person[al]

5

protective equipment"³ because "that's equipment that they're required to wear because *they're out on the floor performing these similar or substantially similar duties*." (*Id*. at PageID.922 (emphasis added).)

Plaintiff's counsel put an even finer point on it, explaining the scope of the conditional class they were seeking to certify was limited to "direct versus indirect" employees:

> Mr. GRIMSLEY: …But so the new class – the way the class is defined, it's limited to the same qualifier that they performed these specific duties that all of the [opt-ins] testified they – were duties that they performed as well as representative plaintiff. So that should eliminate—I mean, *that should resolve the issue concerning the scope concerning this issue that defendants had raised referring to – I think they referred to them as direct versus indirect employees*.
>
> With the new definition, it clearly – it encompasses people that specifically don and doffed the PPE that worked on the production floor performing actual – the manufacturing assembly work.

(*Id.* at PageID.921(emphasis added).)

---

³ During the December 5 hearing, Plaintiff's counsel represented that the Plaintiff and three opt-ins "all testified that they wore the same PPE" (*id.* at PageID.920) based on carbon-copy language in their declarations that they were not paid for changing into and out of "personal protective equipment including, but not limited to, sleeves, a face mask, cut-resistant gloves, steel toe boots, ear plugs, *and/or* safety glasses." (*See, e.g.,* Brady Declaration, ECF No. 22-3, ¶ 6(a) (emphasis added).) Yet in *Smith v. Smithville Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6881062 (E.D. Va. Dec. 21, 2021), when confronted with the fact that "female opt-ins likely did not wear beard guards despite declaring that they did" (*id.* at *7), Plaintiff's counsel argued that "concluding the PPE list with 'and/or' places all PPE items in the alternative, suggesting that each declarant may have worn some or all of the listed items." *Id*. at n. 8.

After assuring the Court that they had abandoned the overly-broad and all-inclusive class definition of "*[a]ll* former and current manufacturing employees" in order to persuade the Court to grant conditional certification, Plaintiff's counsel is once again insisting on using that identical, overly-broad definition in the Notice. During the December 5, 2022 hearing, Plaintiff's counsel argued that the Court should grant certification because they added the "underlying qualifiers" of "material handling, loading machines, unloading machines, running machines, and assembling fuel tank components" (*id*. at PageID.955-956), which limited class eligibility to "production employees," or "people who work on the manufacturing floor, on the production line." (*Id*. at PageID.954.) During the meet-and-confer period regarding Notice contents, Plaintiff's counsel proposed ever-more regressive and less defined class definitions, even ditching reference to the "underlying qualifiers" which they contended sufficiently narrowed the class so-as-to to warrant conditional certification.

Plaintiff's counsels' insistence on using an expansive and all-inclusive definition consisting of "*[a]ll* current and former manufacturing employees" not only directly conflicts with their representations to the Court about the scope of the class they were seeking, but it also injects confusion among plant employees regarding eligibility to join, driving phone traffic to Plaintiff's counsel for

7

clarification.[4] Even worse, Plaintiff's counsel may actually be attempting to effect a back-door expansion of the class this Court actually conditionally certified by insisting on an all-inclusive and overly broad class definition.[5]

In contrast, TI's Notice is both accurate and informative, twin goals of the Court-supervised notice process. *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 166 (1989) (explaining that in their notice-facilitation role courts resolve disputes regarding notice content to ensure it is both accurate, and informative). Because TI's proposed Notice reflects the actual realities and parlance used in its manufacturing plants, plant employees will know exactly who the "Production Operators" and "direct employees" are, and consequently will know definitively who is eligible to join this action. There is simply no legitimate reason for injecting the type of uncertainty and ambiguity – much less disguised and crafty expansion of the class – being advocated by Plaintiff's counsel in their proposed Notice.

### B. The Notice Process Overseen by Analytics, L.L.C., Constitutes Appropriate and Sufficient Notice

---

[4] The Notice form contains telephone and email contact information for Plaintiff's counsel.

[5] It is not unusual for employees to share copies of the Notice and Consent form with co-workers who are not eligible to join the collective action.

The Parties have agreed to use an independent and experienced notice/settlement administrator, Analytics, to administer the notice issuance and collection process.[6] Analytics is a recognized industry leader, which has administered thousands of cases and processed millions of claims, including administering one of the largest mailed-notice campaigns in history, over the 50-plus years it has been in existence.[7] Analytics' engagement here includes acting as the initial repository of contact information for putative class members;[8] sending an email to counsel for the Parties confirming that Notice was sent to eligible class members; skip tracing any undelivered mail returns; and processing consent forms daily and sending them to counsel for the Parties as a PDF by secure file transfer along with a spreadsheet listing all consent forms received.

TI maintains current addresses for Production Operators it currently employs who will, therefore, receive the Notice mailed by Analytics. Given Analytics' expertise in skip tracing and locating former employees whose mail may be returned with expired forwarding addresses, there is no need for either email or

---

[6] TI is footing the bill for Analytics' work.

[7] (*See* https://www.analyticsllc.com/analytics/).

[8] Analytics' engagement moots Plaintiff's request for expedited opt-in discovery. (*See* ECF No. 22-7.)

9

text[9] notice, let alone all three methods of notice as insisted on by Plaintiff's counsel. Moreover, TI's plants operate on a decentralized basis, with each individual facility establishing its own plant policies, practices, rules and regulations,[10] and TI does not require that its plant personnel even collect and maintain personal email addresses or cell phone numbers. Consequently, management personnel at each plant would be required to conduct a time-consuming and highly burdensome review of each present and former eligible employee's electronic and/or hard-copy personnel file searching, one-by-one, for personal email addresses and cell phone numbers.

"Courts generally approve only a single method of notification unless there is a reason to believe that method is ineffective." *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1044 (S.D. Ohio 2018). Here, there is no reason to believe that notification by mail would be ineffective to accomplish the goal of notifying eligible class members of this action, particularly given Analytics' involvement and expertise in skip-tracing. *See Kopp v. Precision Broadband Installations, Inc.*, No. 3:20 CV 2779, 2021 WL 2688520 at *4 (N.D. Ohio June 30, 2021)(Court denied the Lazzaro firm's request for three forms of notice, finding that "[b]ased

---

[9] Depending on an employee's cellphone plan, their carrier may charge them standard message rates and data charges to receive a Notice by text and/or respond to it.

[10] (*See* Allen Declaration, ECF No. 19-2, ¶ 24.)

on *Hoffman-La Roche*, and taking into consideration accuracy, efficiency, and timing, while maintaining respect for the privacy of the potential opt-in plaintiffs, the Court finds Plaintiff's proposed additional methods of notice via email and text message unnecessary"); *see also Aguilar v. Complete Landsculpture, Inc.*, No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004) (quoting *Humphries v. Stream lnt'l Inc.,* No. 3:03-CV-1682-D (N.D. Tex. Feb. 13, 2004)(denying request for personal information, including telephone numbers, reasoning that "highly personal information about persons who may in fact have no interest in this litigation should not be disclosed on the thin basis that [Plaintiff's] counsel desires it" and concluding that the need for compelled disclosure of such data was outweighed by the privacy interests of potential class members, and that there was no apparent reason to conclude that sending a letter to the person's last known address would be inadequate)).

Inundating employees with redundant Notices through multiple means risks crossing the line from merely providing Notice, to judicial endorsement of the action and the stirring up of claims, which the Supreme Court said is to be scrupulously avoided:

> Our decision does not imply that trial courts have unbridled discretion in managing [FLSA] actions. Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial

11

> neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.

*Hoffman-La Roche*, 493 U.S. at 174; *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991) (noting the court has a "responsibility to avoid the 'stirring up' of litigation through solicitation").

Lastly, Plaintiff's proposed Notice and Consent forms provide that, in addition to having the option of mailing, faxing or emailing Consent forms to the Settlement Administrator, that eligible class members be given an additional option of "esigning the form through Adobe Sign." Inclusion of this option should be denied. First, it assumes that TI requires that its plants collect and maintain the personal email addresses of its hourly Production Operators, which is wrong. Second, as mentioned above, to require TI to search through the electronic and/or hard copy personnel files of every Production Operator who worked for it within the last three years hunting for personal email addresses would be extremely time consuming and unduly burdensome. Third, some degree of solemnity and deliberation should accompany the process of becoming an opt-in plaintiff and joining in a suit with Plaintiff asserting claims against TI, which it believes are frivolous and brought in bad faith. Asking putative opt-ins to actually sign their names to a Consent form to join this lawsuit, rather than simply clicking a button, is fitting.

### C. Plaintiff's Counsels' Request for a List of Eligible Class Members is Not Appropriate

Plaintiff's counsel has indicated they intend to request that the Court order TI to provide them with a list of names of all eligible class members, including those who choose not to opt-in to this action. There is no legitimate reason for this request other than to circumvent the neutral court-supervised notice process and engage in an improper solicitation campaign similar to that which the same Plaintiff's counsel conducted in the *DeWitt v. Gervasi Vineyard* case.[11] In *Dewitt*, the Lazarro firm configured its Adobe© platform to send a reminder notice to the entire putative class every day[12] until the recipient signed the consent, which violated the court's order prohibiting counsel from contacting potential opt-in plaintiffs regarding their participation in the lawsuit. As a result, the *Gervasi* defendants filed a motion for sanctions seeking dismissal, and, alternatively, decertification, costs, and attorneys' fees.[13]

---

[11] *Gervasi Vineyard*, No. 5:22-cv-00476, is currently pending in the Northern District of Ohio.

[12] The defendants allege that the reminder notifications (1) improperly suggested that the Court was "waiting" for the employee "to sign," (2) improperly solicited the recipient to "please sign," and (3) threatened that the recipient would receive a daily reminder until the recipient signed. *See* Gervasi's Motion for Sanctions and Reply in Support of its Motion for Sanctions, ECF Nos. 23 and 27, attached collectively as **Exhibit C**.

[13] *See* ECF No. 23.

The tactics of the same Plaintiff's counsel in *Gervasi* are what prompted TI to insist on using Analytics to administer the notice process, to ensure that the identities of and contact information for putative class members would be shielded from Plaintiff's counsel. Armed with a list of the names of putative class members, Plaintiff's counsel could use various search engines and social media platforms such as Facebook to cross-reference their identities with the general locations of the three plants to locate them. And, even if Plaintiff's counsel says they won't use the list during the 45-day opt-in notice period to contact putative opt-ins, they can do it after the opt-in period expires and then argue that it didn't undermine the Court's supervisory authority. Plaintiff's counsel will receive the names and contact information of each person promptly after they opt-in[14] – they do not need access to the names of those who decline to opt-in.

TI requests that the Court deny Plaintiff's counsels' request for a list of names of all putative class members, and further requests that in its Order regarding Notice-related issues, the Court direct that Plaintiff's counsel submit in advance, for the Court's review, any communications Plaintiff's counsel initiates that are not Court-approved.

---

[14] The second page of the Consent form collects each opt-in's telephone number and email address, although as indicated on the form, counsel for the Parties have agreed that this information will not be filed in Court.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court approve its Notice and Consent form attached hereto as **Exhibit A**, authorize issuance of the Notice by the agreed-upon notice administrator, Analytics, by U.S. mail, with follow-up skip-tracing and remailing of any returned Notices, and deny Plaintiff's counsel's request for a list of all eligible collective class members.

Of course, the foregoing assumes that the Court will not have first granted Defendants' pending Motion to Stay (ECF No. 31), which would moot all Notice issues pending the Sixth Circuit's imminent ruling in *Holder v. A&L Home Care and Training Center, LLC.*

Dated: January 17, 2023                                              Respectfully submitted,

/s/ Angelina R. Delmastro

DICKINSON WRIGHT PLLC                    Mahesh K. Nayak (P54867)
M. Reid Estes, Jr. (TN #9043)                   Angelina R. Delmastro (P81712)
424 Church Street, Suite 800                   2600 W. Big Beaver Rd., Ste. 300
Nashville, TN 37219                                 Troy, MI 48084
Tel: 615-254-6538; Fax: 844-670-6009     Tel: 248-433-7200; Fax: 844-670-6009
restes@dickinsonwright.com                   mnayak@dickinsonwright.com
                                                                  adelmastro@dickinsonwright.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, along with email delivery of such filing to all counsel of record.

Respectfully submitted,

DICKINSON WRIGHT PLLC

*/s/ Angelina R. Delmastro*
Mahesh K. Nayak (P54867)
Angelina R. Delmastro (P81712)
2600 W. Big Beaver Rd., Ste. 300
Troy, MI  48084
Tel: 248-433-7200; Fax: 844-670-6009
mnayak@dickinsonwright.com
adelmastro@dickinsonwright.com

M. Reid Estes, Jr. (TN #9043)
424 Church Street, Suite 800
Nashville, TN  37219
Tel: 615-254-6538; Fax: 844-670-6009
restes@dickinsonwright.com

*Attorneys for Defendant*